# EXHIBIT A

**WEITZ & LUXENBERG, P.C.**
*A New York Professional Corporation*
Eduardo R. Sotomayor, Esq.
ID#: 376142021
Erin M. Boyle, Esq.
ID#: 312672020
220 Lake Drive East, Suite 210
Cherry Hill, NJ 08002
Tel. (856) 755-1115
Attorneys for Plaintiff(s)

| | |
|---|---|
| DENNIS PEARSON and DONNA PEARSON, h/w<br><br>Plaintiffs<br><br>vs.<br><br>THE BOEING COMPANY, et al.<br><br>Defendants. | **SUPERIOR COURT OF NEW JERSEY**<br><br>MIDDLESEX COUNTY<br><br>DOCKET NO. MID-L- 005740-24 AS<br><br>**CIVIL ACTION SUMMONS** |

***From the State of New Jersey***
**TO THE DEFENDANT NAMED BELOW**

From the State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN-971, Trenton, NJ 08625-0971. A filing fee payable to the [Clerk of the Superior Court] Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov

Dated: October 10, 2024

/S/Michelle Smith
Michelle Smith, Clerk of the Superior Court

Name and Address of Defendant to be Served:

**THE BOEING COMPANY**
80 State Street
Albany, NY 12207

**WEITZ & LUXENBERG, P.C.**
*A New York Professional Corporation*
Eduardo R. Sotomayor, Esq.
ID#: 376142021
Erin M. Boyle, Esq.
ID#: 312672020
220 Lake Drive East, Suite 210
Cherry Hill, NJ 08002
(856) 755-1115
Attorneys for Plaintiffs

**DENNIS PEARSON and DONNA PEARSON, h/w**

**Plaintiffs**

**vs.**

**AT&T;**

**CLEAVER- BROOKS, INC.;**

**DAP, INC.;**

**DCo LLC** f/k/a DANA COMPANIES, LLC;

**EATON AEROQUIP INC.,** f/k/a AEROQUIP CORPORATION;

**EATON CORPORATION,** as successor -in-interest to CUTLER-HAMMER, INC.;

**FEDERAL- MOGUL ASBESTOS PERSONAL INJURY TRUST** as a successor to FELT PRODUCTS MFG. CO.;

**FOSTER WHEELER, L.L.C.;**

**GENERAL ELECTRIC COMPANY;**

**GENUINE PARTS COMPANY,** trading as NAPA AUTO PARTS;

**GOULDS PUMPS LLC;**

**GRINNELL LLC;**

**SUPERIOR COURT OF NEW JERSEY LAW DIVISION MIDDLESEX COUNTY**

**DOCKET NO. L- 24 AS**

**CIVIL ACTION (ASBESTOS LITIGATION)**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**HONEYWELL INTERNATIONAL, INC.,** f/k/a ALLIED SIGNAL, INC. / BENDIX;

**IMO INDUSTRIES, INC.;**

**ITT LLC.**, Individually and as successor to BELL & GOSSETT and as successor to KENNEDY VALVE MANUFACTURING CO., Inc.;

**LOCKHEED MARTIN CORPORATION,** Individually, and as successor by merger to LOCKHEED CORPORATION;

**McCORD CORPORATION;**

**McDONNELL DOUGLAS CORPORATION;**

**METROPOLITAN LIFE INSURANCE CO.;**

**MORSE TEC LLC,** f/k/a BORG WARNER MORSE TEC LLC and Successor-by-Merger to BORG-WARNER CORPORATION;

**NOKIA USA INC;**

**PARAMOUNT GLOBAL,** f/k/a VIACOMCBS Inc., f/k/a CBS CORPORATION, a Delaware Corporation, f/k/a/ VIACOM INC., successor by merger to CBS CORPORATION, a PENNSYLVANIA CORPORATION, f/k/a WESTINGHOUSE ELECTRIC CORPORATION;

**PNEUMO ABEX LLC,** successor in interest to ABEX CORPORATION (ABEX);

**PRATT & WHITNEY POWER SYSTEMS, INC.;**

**REDCO CORPORATION** f/k/a CRANE CO.;

**ROCKWELL AUTOMATION, INC.,** as successor in interest to ALLEN- BRADLEY COMPANY, LLC;

**SCHNEIDER ELECTRIC USA, INC.** formerly known as SQUARE D COMPANY;

**THE BOEING COMPANY;**

**THE GOODYEAR TIRE AND RUBBER COMPANY;**

**UNION CARBIDE CORPORATION;**

**VERIZON PENNSYLVANIA, LLC;**

**WESTERN ELECTRIC COMPANY.,** Individually and as Successor to AT&T TECHNOLOGIES, INC;

**and JOHN DOE CORPORATIONS, 1-50**

**Defendants.**

Plaintiffs Dennis Pearson and Donna Pearson by way of Complaint against the Defendants named herein, allege as follows:

**PARTIES-PLAINTIFFS**

1. Plaintiffs Dennis Pearson and Donna Pearson reside at 342 24th Avenue Southeast, Cambridge, MN 55008.

2. Plaintiff Donna Pearson (also referred to in this Complaint as PLAINTIFF SPOUSE) is the spouse of Plaintiff Dennis Pearson.

3. Dennis Pearson is 79 years old who was diagnosed with mesothelioma on or around September 22, 2023. Mr. Pearson was exposed to asbestos-containing products in the occupational and non-occupational setting.

In the occupational setting, Mr. Pearson was exposed to asbestos while serving in the United States AirForce, stationed at McGuire AirForce Base in New Jersey from 1963 to 1967. While serving in the US AirForce, Mr. Pearson worked as a Jet Engine Mechanic and was exposed on a frequently and regularly basis to asbestos while performing maintenance on different types of aircrafts including C-130, C-135, F-4, C-18, J-79. He worked with and around asbestos-containing products including but not limited to gaskets, hoses, sleeves, clamps, wirings, blankets, brakes,

MID-L-005740-24 10/09/2024 2:58:55 PM Pg 4 of 27 Trans ID: LCV20242600971

insulation, engine fuel lines, and electrical equipment. Mr. Pearson was also exposed to asbestos in the areas that he slept in.

In addition, Mr. Pearson was exposed to asbestos in the occupational settings while working at the Pine Bend Refinery in Pine Bend, Minnesota from 1967 to 1968 and while also working at Northwest Airlines from 1969 to 1970. Additionally, from 1972 to 2002, Dennis Pearson was an employee of an entity of the Bell System at Northwestern Bell in Minneapolis, Minnesota, and was regularly and frequently exposed to asbestos containing products.

During his occupational history, Mr. Pearson performed his job duties and worked with and around boilers, pumps, gaskets, valves, insulation, packing, grinding wheels, sleeves, firehoses, aircraft engines, caulk, insulated pipes, engine fuel lines, electrical panels, breakers, wire and cables, power cables, power boards, transit cable covers, and cable bags.

Aside from his occupational history, Mr. Pearson attended the Spartan School of Aeronautics and Technology in Tulsa, Oklahoma from January of 1968 to October of 1969 to receive his Airframe Power Plant License. During this time period, Mr. Pearson worked with and around asbestos-containing aircraft engines, gaskets, brakes, sleeves, hoses, blankets, insulation, and electrical equipment on a frequently and regularly basis.

In the non-occupational setting, Mr. Pearson was exposed to asbestos while performing home renovations starting in 1970 through 1990 where he worked with asbestos-containing joint compounds, sheetrock, drywall, and caulk. Last, Mr. Pearson was exposed to asbestos while performing shade tree automotive repairments starting in 1960 until approximately 1980. He performed automotive repairments including brakes, clutches and gaskets repairs on his personal vehicles, family and friends in the neighborhood.

MID-L-005740-24 10/09/2024 2:58:55 PM Pg 5 of 27 Trans ID: LCV20242600971

4. As a direct and proximate result of the above exposures, Plaintiff Dennis Pearson contracted mesothelioma and has suffered, and continues to suffer, from other various diverse injuries and attendant complications.

5. Plaintiff Dennis Pearson was caused to suffer severe, permanent and disabling personal injury, has expended and will be caused to expend sums of money for medical care and treatment, therefore, has been prevented and will be prevented from pursuing normal activities and employment, has experienced and will continue to experience severe pain and suffering and mental anguish, and has been deprived and will continue to be deprived of ordinary pursuits and enjoyments of life.

6. Reference herein to "Plaintiff" or "Plaintiffs" is a reference to all the persons set forth above as is syntactically and contextually correct.

**PARTIES-DEFENDANTS**

7. Defendants are corporations organized under the laws of New Jersey and/or various states of the United States of America that were and are doing business in the State of New Jersey. The aforementioned Defendants mined, milled, designed, manufactured, sold, supplied, purchased and/or marketed asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talc powder products, and/or asbestos fiber of various kinds and grades to which Plaintiff was exposed.

8. Defendants, AT&T; CLEAVER- BROOKS, INC.; DAP, INC.; DCo LLC f/k/a DANA COMPANIES, LLC; EATON AEROQUIP INC., f/k/a AEROQUIP CORPORATION; EATON CORPORATION, as successor -in-interest to CUTLER-HAMMER, INC.; FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST as a successor to FELT PRODUCTS MFG. CO.; FOSTER WHEELER, L.L.C.; GENERAL ELECTRIC COMPANY; GENUINE PARTS

COMPANY, trading as NAPA AUTO PARTS; GOULDS PUMPS LLC; GRINNELL LLC; HONEYWELL INTERNATIONAL, INC., f/k/a ALLIED SIGNAL, INC. / BENDIX; IMO INDUSTRIES, INC.; ITT LLC., Individually and as successor to BELL & GOSSETT and as successor to KENNEDY VALVE MANUFACTURING CO., Inc.; LOCKHEED MARTIN CORPORATION, Individually, and as successor by merger to LOCKHEED CORPORATION; McCORD CORPORATION; McDONNELL DOUGLAS CORPORATION; METROPOLITAN LIFE INSURANCE CO.; MORSE TEC LLC, f/k/a BORG WARNER MORSE TEC LLC and Successor-by-Merger to BORG-WARNER CORPORATION; NOKIA USA INC; PARAMOUNT GLOBAL, f/k/a VIACOMCBS Inc., f/k/a CBS CORPORATION, a Delaware Corporation, f/k/a/ VIACOM INC., successor by merger to CBS CORPORATION, a PENNSYLVANIA CORPORATION, f/k/a WESTINGHOUSE ELECTRIC CORPORATION; PNEUMO ABEX LLC, successor in interest to ABEX CORPORATION (ABEX); PRATT & WHITNEY POWER SYSTEMS, INC.; REDCO CORPORATION f/k/a CRANE CO.; ROCKWELL AUTOMATION, INC., as successor in interest to ALLEN- BRADLEY COMPANY, LLC; SCHNEIDER ELECTRIC USA, INC. formerly known as SQUARE D COMPANY; THE BOEING COMPANY; THE GOODYEAR TIRE AND RUBBER COMPANY; UNION CARBIDE CORPORATION; VERIZON PENNSYLVANIA, LLC; WESTERN ELECTRIC COMPANY., Individually and as Successor to AT&T TECHNOLOGIES, INC, are corporations or other business entities organized under the laws of one or more states of the United States of America and doing business in New Jersey.

9. The term “Defendants” refers to all of the entities named in paragraph 5 above. The term “Premises Defendants” refers to all of the entities identified in paragraph 6 above.

10. Defendants, JOHN DOE CORPORATIONS, 1-50, are the fictitious names or corporations, Partnerships, and/or other business entities whose identities are not presently known, and who are the alter egos of or are otherwise responsible for the conduct of liability of those who mined, milled, manufactured, sold, supplied, purchased, marketed, installed and/or removed asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talc powder products, and/or raw asbestos fiber of various kinds and grades to which Plaintiff was exposed.

11. Defendants conduct business in the State of New Jersey, and certain Defendants reside or maintain their principal offices and/or principal places of business in the State of New Jersey.

**FIRST COUNT**

12. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

13. Defendants, at all times material hereto, acted through their respective officers, employees and agents, who in turn were acting within the scope of their authority and employment in furtherance of the business of Defendants.

14. Defendants were engaged, directly, or indirectly, in the mining, milling, designing, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, or distributing of asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products, and/or asbestos-

containing cosmetics, and/or raw asbestos fiber of various kinds and grades (hereinafter collectively referred to as "Defendants' Products").

15. Defendants, directly or indirectly, caused Defendants' Products to be sold to or used by Plaintiff and/or in close proximity to Plaintiff.

16. Plaintiff was exposed to and came in contact with Defendants' Products. Plaintiff inhaled and/or ingested the asbestos dust and fibers emanating from Defendants' Products.

17. As a direct and proximate result of Plaintiff's inhalation and ingestion of dust particles and fibers from Defendants' Products, Plaintiff developed permanent and disabling personal injuries.

18. During the time that Defendants mined, milled, designed, manufactured, produced processed, compounded, converted, sold, merchandised, distributed, and supplied Defendant's Products, Defendants knew or in the exercise of reasonable care should have known that Defendants' Products were defective, ultra-hazardous, dangerous, and otherwise highly harmful to Plaintiff, and others.

19. Defendants knew or in the exercise of reasonable care should have known that the use of Defendants' Products, would cause asbestos dust and fibers to be released into the air and would create dangerous and unreasonable risk of injury to the lungs, respiratory systems, larynx, stomach and other bodily organs of users of Defendants' Products, and to others, like bystanders and household members, breathing that air and coming into contact with that dust.

20. Plaintiff, and others, did not know the nature and extent of the injury that would result from contact with and exposure to Defendants' Products, or from the inhalation or ingestion of the asbestos dust and fibers.

21. Defendants knew or in the exercise of reasonable care should have known that Plaintiff would come into contact with and be exposed to Defendants' Products and would inhale or ingest asbestos dust and fibers as a result of the ordinary and foreseeable use of Defendants' Products by Plaintiff, along with others.

22. Despite the facts as set forth above, Defendants negligently, grossly negligently, maliciously, with willful and wanton disregard, recklessly and intentionally:

(a) Mined, milled, designed, manufactured, produced, processed, compounded, converted, sold, supplied, merchandised, distributed or otherwise placed in the stream of commerce Defendant's Products which Defendants knew, or in the exercise of reasonable care should have known, were defective, dangerous, ultra-hazardous and otherwise unreasonably harmful to Plaintiff, and others;

(b) Failed to take reasonable precautions or exercise reasonable care to warn Plaintiff, along with others, including Plaintiff's family members, adequately of the risks, dangers and harm to which Plaintiff would be exposed by exposure to, contact with, use and handling of Defendants' Products, or by inhalation or ingestion of the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products;

(c) Failed to provide information or reasonably safe and sufficient safeguards, wearing apparel, proper equipment and appliances necessary to protect Plaintiff, and others, from being injured, poisoned, disabled, killed or otherwise harmed by using, handling, coming into contact with and being exposed to Defendants' Products, or by inhalation or ingestion of the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products;

(d) Failed to package their products in a manner that would assure that Plaintiff, and others, would not come into contact with or be exposed to the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products;

(e) Failed to advise Plaintiff, and others, of the necessity to adopt and enforce a safe, sufficient and proper method and plan of using, handling, coming into contact with and being exposed to Defendants' Products so that Plaintiff would not inhale or ingest the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products;

(f) Ignored and/or suppressed medical and scientific information, studies, tests, data and literature which Defendants acquired during the course of their normal business activities concerning the risk of asbestosis, scarred lungs, cancer, mesothelioma, respiratory disorders and other illnesses and diseases to individuals such as Plaintiff and other persons similarly situated who were exposed to Defendants' Products;

(g) Disregarded medical and scientific information, studies, tests, data and literature concerning the causal relationship between the inhalation or ingestion of asbestos dust and fibers, and such diseases as asbestosis, mesothelioma, scarred lungs, cancer, respiratory disorders and other illnesses and diseases;

(h) Failed to investigate, impose and comply with policies, procedures, standards and regulations as to exposure to asbestos, asbestos fibers, and asbestos dust;

(i) Wrongfully processed, manufactured, packaged, distributed, used, delivered, and sold Defendants' Products for use by Plaintiff, others like him and the general public;

(j) Exposed and continued to expose Plaintiff and other persons similarly situated to the risk of developing asbestosis, mesothelioma, scarred lungs, cancer and other illnesses, all of

which risks Defendants knew, or in the exercise of reasonable care should have known, were consequences of exposure to asbestos dust and fibers;

(k) Failed to seek substitute materials in lieu of the use of talc and/or asbestos;

(l) Failed to provide proper, adequate, correct and appropriate warnings, labels, advice, cautions, instructions, and information as to the use of and consequences of exposure to Defendants' Products, asbestos, asbestos fibers and dusts and failed to use reasonable care as to same;

(m) Failed to provide proper and appropriate warnings and cautions to all users of Defendants' Products, including Plaintiff, of the dangers of asbestos-containing products, fibers and dusts, both known and foreseeable; and

(n) Failed to advise Plaintiff, as well as others, who Defendants knew, or in the exercise of reasonable care, should have known, had been exposed to, inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products, to cease further uncontrolled or unprotected exposure to Defendants' Products and the inhalation or ingestion of asbestos dust and fibers; to be examined by competent medical doctors to determine the nature and extent of any and all diseases caused by inhalation or ingestion of asbestos dust and fibers; and to receive medical care and treatment for such diseases.

23. Defendants otherwise acted negligently, grossly negligently, maliciously, with willful and wanton disregard, recklessly and with intentional disregard for the welfare of Plaintiff in the mining, milling, designating, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, distributing, or otherwise placing in the stream of commerce Defendants' Products.

24. Defendants acted in a negligent, grossly negligent, malicious, willful and wanton manner, with reckless disregard for the health and welfare of Plaintiff and others similarly situated and failed to use reasonable care under all of the circumstances.

25. As a direct and proximate result of the aforementioned acts and omissions of Defendants, Plaintiff was exposed to and came in contact with Defendants' Products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products. Plaintiff developed mesothelioma as a direct and proximate result of said exposure to Defendants' Products. Plaintiff has and continues to endure severe pain and suffering and mental anguish, has been required to expend great sums of money for medical care and treatment related thereto, has been prevented from pursuing normal activities and has been deprived of ordinary pursuits and enjoyments of life. Plaintiff has suffered lost earnings and other pecuniary loss.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of the State of New Jersey, including but not limited to compensatory damages, pecuniary damages, punitive damages, loss of consortium (per quod), pre- and post-judgement interest, and costs of suit, and attorney fees as provided by law.

## SECOND COUNT

26. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

27. Defendants expressly and impliedly warranted that Defendants' Products, which they mined, milled, designed, manufactured, produced, processed, compounded, converted, sold, supplied, merchandised, distributed or otherwise placed in the stream of commerce were merchantable, reasonably fit for use and safe for their intended purposes.

28. Defendants breached said warranties in that Defendants' Products were defective, ultra-hazardous, dangerous, unfit for use, not merchantable and not safe for their intended, ordinary and foreseeable use and purposes.

29. As a direct and proximate result of Defendants' breach of warranties, Plaintiff was exposed to and came in contact with Defendants' Products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products. Plaintiff has suffered the injuries, expenses and losses, including severe pain and suffering and mental anguish, as alleged in prior counts of this Complaint.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of the State of New Jersey, including but not limited to compensatory damages, pecuniary damages, punitive damages, loss of consortium (per quod), pre- and post-judgement interest, and costs of suit, and attorney fees as provided by law.

## THIRD COUNT

30. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

31. Defendants failed to disclose and intentionally and negligently misrepresented to Plaintiff, and others, the health risks created by ordinary use of Defendants' Products.

32. Plaintiff, as well as others, relied upon said representations, and Plaintiff, as well as the reliance of others, was foreseeable to Defendants.

33. As a result of Defendants' conduct, Plaintiff was exposed to and came in contact with Defendants' Products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products. Plaintiff has suffered the injuries, expenses

and losses, including severe pain and suffering and mental anguish, as alleged in prior counts of this Complaint.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of the State of New Jersey, including but not limited to compensatory damages, pecuniary damages, punitive damages, loss of consortium (per quod), pre- and post-judgement interest, and costs of suit, and attorney fees as provided by law.

**FOURTH COUNT**

34. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

35. Defendants are strictly liable to Plaintiffs by reason of the following:

(a) Defendants were engaged in the business of being miners, millers, designers, manufacturers, producers, processors, sellers, suppliers, and distributors of Defendants' Products;

(b) Defendants knew or had reason to know that Plaintiff and other persons similarly situated would be ultimate users or consumers of Defendants' Products or would be exposed to Defendants' Products;

(c) Defendants sold or otherwise placed Defendants' Products into the stream of commerce in a defective condition, unreasonably dangerous to Plaintiff and other persons similarly situated;

(d) Throughout the many years that Plaintiff and other similarly situated persons were exposed to and used Defendants' Products, Defendants' Products reached the users and consumers without substantial change in the condition in which they were sold;

(e) The ordinary and foreseeable use of Defendants' asbestos-containing products constituted a dangerous and ultra-hazardous activity and created an unreasonable risk of injury to users, bystanders and household members;

(f) Defendants' Products were defective in that they deviated from the design specifications and/or standards set forth by the manufacturer, were incapable of being made safe for their ordinary and intended use and purpose due to their defective design, were defective because they failed to contain adequate warnings, were defectively manufactured as they failed to comply with their own specifications, were defectively designed because the risks and dangers associated with the use of Defendants' Products outweighed their benefits, and Defendants failed to give any warnings or instructions, or failed to give adequate or sufficient warnings or instructions about the risks, dangers and harm associated with the use of Defendants' Products.

(g) Defendants' Products were defectively designed because Defendants' Products are more dangerous than would be contemplated by ordinary users, consumers, workers, bystanders and household members, and also because the risks of Defendants' Products outweighed their benefits;

(h) Defendants' Products were defectively manufactured as they failed to comply with their own specifications.

36. As a consequence of the defective condition of Defendants' Products, Plaintiff was exposed to and came in contact with Defendants' Products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products. Plaintiff has suffered the injuries, expenses and losses, including severe pain and suffering and mental anguish, as alleged in prior counts of this Complaint.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of the State of New Jersey, including but not limited to compensatory damages, pecuniary damages, punitive damages, loss of consortium (per quod), pre- and post-judgement interest, and costs of suit, and attorney fees as provided by law.

**FIFTH COUNT**

**NEW JERSEY PRODUCTS LIABILITY ACT CLAIM**
**(NJSA 2A:58C-1 *et seq.*)**

37. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

38. At all relevant times, AT&T undertook and assumed a duty to preserve and protect the lives, health and safety of individuals like Plaintiff, Dennis Pearson, by dictating, promulgating and/or coordinating industrial hygiene and occupational safety policies, procedures and other efforts for AT&T, Western Electric Company and Northwestern Bell.

39. AT&T undertook and assumed this duty when it provided comprehensive health and safety information; specified materials to be used and specified when use of certain materials was to be discontinued, performed dust studies, tests and inspections, by providing assistance, supervision, guidance and by issuing recommendations, notices, reports, findings, cautions, warnings and safeguards in order to provide safe working conditions and to preserve and protect the lives, health and safety of individuals like Plaintiff, particularly to protect them from the dangerous and defective properties of asbestos, asbestos products and compounds and other dangerous substances used by employees and others working for AT&T, Western Electric and Northwestern Bell.

40. Plaintiff, Dennis Pearson, worked in premises owned, leased and/or operated by the Bell System. AT&T undertook to provide the Bell System with specifications, policies and procedures for construction of its premises and specifications for the machinery and materials used in and on those premises. AT&T further provided Western Electric and Northwestern Bell with comprehensive specifications, policies and procedures regarding the work practices of Western Electric and Northwestern Bell employees on every aspect of their employment.

41. In providing this information and these services, AT&T did not act in a managerial or policymaking capacity for Western Electric and Northwestern Bell. At all times, AT&T maintained the corporate formalities and separate corporate identities of itself and Western Electric and Northwestern Bell.

42. Alternatively, AT&T dominated and controlled Western Electric and Northwestern Bell and knowingly and intentionally disregarded its specific and longstanding knowledge of the hazards of asbestos and the damages faced by employees of Western Electric and Northwestern Bell for its pecuniary gain and deliberately required individuals like Plaintiff Dennis Pearson to work with and around hazardous asbestos containing products despite knowing that invisible amounts of asbestos dust could kill and that here was no safe level of asbestos to prevent the development of cancer, including mesothelioma.

43. While engaging in the conduct described above, AT&T knew, or should have known, based on prior reports of individuals contracting cancer from working with and around asbestos-containing products and based on explicit warnings specifically identifying cancer from exposure to asbestos dust created by asbestos containing products, that exposure to asbestos was likely to result in injury or death of individuals like Plaintiff Dennis Pearson. Furthermore, AT&T was aware that individuals, like Plaintiff, were not aware of the risk because the danger was not

apparent. AT&T's conduct furthered the lack of awareness by inducing individuals, like Plaintiff Dennis Pearson, to rely upon AT&T to inform them of the dangers of their work. Moreover, AT&T deliberately concealed and misrepresented the danger so as to prevent individuals, like Plaintiff Dennis Pearson, from exercising informed judgment about whether to perform work with asbestos.

44. AT&T intended for Plaintiff Dennis Pearson's employer, as an entity of the Bell System, to rely upon AT&T's actions in providing safety information, materials and construction specifications and work practice policies and procedures described above.

45. AT&T intended for Plaintiff, Dennis Pearson, to rely upon AT&T's actions in providing safety information, materials and construction specifications and work practice policies and procedures described above.

46. Plaintiff, Dennis Pearson's employer, as an entity of the Bell System, did, in fact, rely upon AT&T's safety information, materials and construction specifications and work practice policies and procedures described above.

47. Plaintiff, Dennis Pearson, did, in fact, rely upon AT&T's safety information, material and construction specifications and work practice policies and procedures described above.

48. Plaintiff and others working around him used asbestos products in the intended manner and without significant change in their condition and relied on AT&T to provide appropriate and sufficient instructions as to proper methods of handling the asbestos products, being unaware of the dangerous properties of asbestos.

49. Plaintiff, Dennis Pearson, similarly relied upon AT&T, which provided Western Electric and Northwestern Bell with designs for its premises and provided specifications for the materials, work practices and safety procedures to be used, including the work of Plaintiff and his

co-workers, to design such premises in a reasonably safe condition and to warn Western electric and Northwestern Bell, Plaintiff and his co-workers of the latent hazards that they would encounter in and on such premises in the manner and with the materials specified by AT&T.

50. Plaintiff, Dennis Pearson, relied upon AT&T to provide him and his co-workers with adequate warning, training, information and protection, so that he would not be exposed to deadly poisons such as asbestos.

51. The Defendant AT&T Corporation negligently failed to exercise the standard of care and skill it was obliged to exercise by reason of its undertaking and assumption of duty, including, but not limited to properly test for asbestos hazards; failure to properly communicate test results and issue and implement appropriate recommendations regarding dust control and the proper method for using and handling asbestos containing products; failure to warn Western Electric and Northwestern Bell employees of the hazards of asbestos and asbestos products; and failure to expeditiously discontinue use and remove asbestos products, thereby causing and creating or permitting dangerous conditions and dangerous and defective substances on or about the Northwestern Bell premises.

52. Defendants are strictly liable to Plaintiffs by reason of the following:

(a) Defendants were engaged in the business of being miners, millers, designers, manufacturers, producers, processors, sellers, suppliers, and distributors of Defendants' Products;

(b) Defendants knew or had reason to know that Plaintiff and other persons similarly situated would be ultimate users or consumers of Defendants' Products or would be exposed to Defendants' Products;

(c) Defendants sold or otherwise placed Defendants' Products into the stream of commerce in a defective condition, unreasonably dangerous to Plaintiff and other persons similarly

situated, which were not fit, suitable or safe for their intended purposes and/or reasonably foreseeable uses;

(d) Throughout the many years that Plaintiff and other similarly situated persons were exposed to and used Defendants' Products, Defendants' Products reached the users and consumers, and their household members, without substantial change in the condition in which they were sold;

(e) The ordinary and foreseeable use of Defendants' asbestos-containing products constituted a dangerous and ultra-hazardous activity and created an unreasonable risk of injury to users, bystanders and household members;

(f) Defendants' Products were defective in that they deviated from the design specifications and/or standards set forth by the manufacturer, were incapable of being made safe for their ordinary and intended use and purpose due to their defective design, were defective because they failed to contain adequate warnings, were defectively manufactured as they failed to comply with their own specifications, were defectively designed because Defendants' Products were more dangerous than would be contemplated by an ordinary user, the risks of Defendants' Products outweighed their benefits, and Defendants failed to give any warnings or instructions, or failed to give adequate or sufficient warnings or instructions about the risks, dangers and harm associated with the use of Defendants' Products, and/or failed to give adequate post-sale warnings or instructions.

(g) Defendants' Products were defectively designed because Defendants' Products are more dangerous than would be contemplated by ordinary users, consumers, workers, bystanders and household members, and also because the risks of Defendants' Products outweighed their benefits;

(h) Defendants' Products were defectively manufactured as they failed to comply with their own specifications.

53. As a consequence of the defective condition of Defendants' Products, Plaintiff was exposed to and came in contact with Defendants' Products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products. Plaintiff has suffered the injuries, expenses and losses, including severe pain and suffering and mental anguish, as alleged in prior counts of this Complaint.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of the State of New Jersey, including but not limited to compensatory damages, pecuniary damages, punitive damages, loss of consortium (per quod), pre- and post-judgement interest, and costs of suit, and attorney fees as provided by law.

**SIXTH COUNT**

54. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

55. Defendants acted in concert with each other and with other members of the industry through express agreement, implicit agreement, imitative behavior and conscious parallel behavior:

(a) To withhold from users of Defendants' Products, and from persons who Defendants knew or should have known would be exposed to Defendants' Products, information regarding the health risks of breathing or ingesting asbestos dust and fibers;

(b) To eliminate or prevent development of adequate procedures and tests relating to the health hazards of exposure to asbestos fibers and dust; and

(c) To assure that Defendants' Products became widely used in industries such as personal hygiene, beauty, infant care, and similar industries.

56. Defendants knew that their activities were violative of common law standards of care and that their withholding of information, failure to develop tests and procedures and promotion of widespread use of asbestos-containing products would expose persons such as Plaintiff to unreasonable risk of bodily injury.

57. Defendants nevertheless gave substantial assistance and encouragement to each other and to other members of the industry and assisted each other and other members of the industry in: withholding information regarding the dangers of asbestos; failing to develop tests and procedures to assure that users of asbestos would not subjected to risk of injury; and promoting widespread use of Defendants' Products which Defendants knew would expose Plaintiff to unreasonably risk of bodily injury.

58. As a direct and proximate consequence of the concerted actions of Defendants and other members of the industry, Plaintiff was exposed to and came in contact with Defendants' Products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products. Plaintiff was caused to suffer the injuries, expenses and losses, including severed pain and suffering and mental anguish, as alleged in prior counts of this Complaint.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of the State of New Jersey, including but not limited to compensatory damages, pecuniary damages, punitive damages, loss of consortium (per quod), pre- and post-judgement interest, and costs of suit, and attorney fees as provided by law.

**SEVENTH COUNT**

59. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

60. The Defendants constitute all known, non-remote producers, designers, manufacturers, suppliers, distributors of the asbestos-containing products which could have caused Plaintiff's injuries.

61. Each of the Defendants, whether acting individually or in concert with others, violated a duty of care owed to Plaintiff, or otherwise engaged in culpable activity against Plaintiff. The acts and omissions of at least one of the Defendants caused Plaintiff to suffer the injuries, losses and expenses alleged in prior counts of this Complaint.

62. Western Electric Company knew or should have known of the dangers and hazards associated in working with and handling products containing asbestos and resultant asbestos fibers and dust.

63. Western Electric had a duty to warn its employees and Plaintiff about the hazards associated with the asbestos containing products it manufactured and used.

64. Western Electric failed to warn its employees and Plaintiff about the hazards associated with the asbestos containing products it manufactured and used.

65. Western Electric was negligent in its communication with its employees and Plaintiff about removal, replacement, repair and installation of asbestos containing wires, cables, equipment and/or asbestos containing component parts that were manufactured, supplied, and distributed by Western Electric, which resulted in the Plaintiff, Dennis Pearson, being exposed to asbestos fibers.

66. Western Electric was negligent in its failure to communicate and warn, failure to properly train its employees, and failure to take actions to protect Plaintiff, Dennis Pearson, so that he would not be exposed to deadly poisons such as asbestos during the removal, replacement, repair and installation of asbestos containing wires, cables, equipment and/or asbestos containing component parts that were manufactured, supplied, and distributed by Western Electric, which resulted in the Plaintiff, Dennis Pearson, being exposed to asbestos fibers.

67. Plaintiff in no respect can be blamed should Plaintiff be unable to establish which of the asbestos-containing products caused the injuries complained of herein.

68. The burden of proof in this matter thus should shift to Defendants to demonstrate that their respective conduct and their respective asbestos-containing products could not have caused Plaintiff's injuries, and failing such proof, Defendants should be held jointly, severally, or alternatively liable for Plaintiff's injuries.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of the State of New Jersey, including but not limited to compensatory damages, pecuniary damages, punitive damages, loss of consortium (per quod), pre- and post-judgement interest, and costs of suit, and attorney fees as provided by law.

## EIGHTH COUNT

69. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

70. At all times relevant hereto, the Defendants, as a part of their businesses, were engaged, directly, or indirectly, in the mining, milling, designing, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, or distributing of

asbestos-containing products, and/or asbestos containing talc and/or other finished and unfinished asbestos-containing talc powder products, which Defendants placed into the stream of commerce in a defective, unsafe and inherently dangerous condition in that, among other things, adequate warnings, instructions and precautions were not given to known and foreseeable users and handlers, including Plaintiff, and the products and materials were expected to and did reach such persons, including Plaintiff, without substantial change in the condition in which they were sold.

71. At all times relevant hereto, the asbestos containing products and materials were used and employed for the purposes for which they were mined, processed and manufactured, designed, fashioned, packaged, inspected, tested, sold and intended to be used, and in a manner foreseeable to the Defendants.

72. The injuries and resulting damages to Plaintiff were caused by the defective, unsafe and dangerous condition of the asbestos products and materials which Defendants distributed, supplied, sold, and otherwise placed in the stream of commerce.

73. As a consequence of the Defendants' conduct and//or the defective condition of Defendants' Products, Plaintiff was exposed to and came in contact with Defendants' Products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products. Plaintiff has suffered the injuries, expenses and losses, including severe pain and suffering and mental anguish, as alleged in prior counts of this Complaint.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of the State of New Jersey, including but not limited to compensatory damages, pecuniary damages, punitive damages, loss of consortium (per quod), pre- and post-judgement interest, and costs of suit, and attorney fees as provided by law.

## NINTH COUNT

74. PLAINTIFF SPOUSE reiterates the facts and contentions as set forth above and repeats them herein.

75. PLAINTIFF SPOUSE has suffered loss of consortium, companionship, services, society and support.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of the State of New Jersey, including but not limited to compensatory damages, pecuniary damages, punitive damages, loss of consortium (per quod), pre- and post-judgement interest, and costs of suit, and attorney fees as provided by law.

Plaintiffs hereby incorporate by reference all allegations set forth in the Standard Complaint, as amended, previously served upon all parties and filed with Middlesex County Clerk. Additional copies of the Standard Complaint are available upon written request to Plaintiffs' counsel and a pdf version can be downloaded from the judiciary's website: https://www.njcourts.gov.attorneys/mcl/middlesex/asbestos.html.

In addition, copies of the Mass Tort Asbestos Manual, General Orders and Standing Orders pertaining to Middlesex County asbestos litigation are available from the judiciary's website, or from Special Master Agatha N. Dzikiewicz, Esq., Middlesex County Courthouse, 56 Paterson Street, Chambers 204, New Brunswick, New Jersey 08903, Tel: 732-645-4300 ext. 88211, e-mail – Agatha.Dzikiewicz@njcourts.gov.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury on all issues.

## DEMAND FOR ANSWERS TO INTERROGATORIES

Plaintiffs demand answers to the Standard Interrogatories pursuant to the Asbestos General Order. Said Standard Interrogatory forms may be obtained online at www.njcourtsonline.com.

**DESIGNATION OF TRIAL COUNSEL**

Pursuant to Rule 4:25-4, Erin M. Boyle, Esq. and Joseph J. Mandia, Esq. are hereby designated as trial counsel in this matter.

**CERTIFICATION PURSUANT TO RULE 4:5-1**

I hereby certify that to my knowledge the within matter in controversy is not the subject of any other action currently pending in any court or of a pending arbitration proceeding, and that no other action or arbitration proceeding is contemplated. I have no knowledge at the time of any non-party who should be joined in the action.

**WEITZ & LUXENBERG, P.C.**
*A New York Professional Corporation*
Attorneys for Plaintiffs

Eduardo R. Sotomayor, Esq.
376142021
220 Lake Drive East, Suite 210
Cherry Hill, NJ 08002
(856) 755-1115

Dated: October 9, 2024